IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSKP OAK GROVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CAROL VENUTO, individually and as executrix of the Estate of RALPH A. VENUTO, Sr., et al.,<br><br>Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 10-6465 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Robert A. Vort, Esq.
2 University Plaza, Suite 101
Hackensack, NJ 07601
Attorney for Plaintiff

Dimitri Luke Karapelou, Esq.
LAW OFFICES OF DIMITRI L. KARAPELOU, LLC
Two Penn Center
1500 JFK Boulevard, Suite 920
Philadelphia, PA 19102
Attorney for Defendants

**SIMANDLE, Chief Judge:**

## I. INTRODUCTION

This matter comes before the Court on a motion for judgment on the pleadings by Defendants Carol Venuto, Ralph A. Venuto, Jr., Carol Rebbecchi, Richard P. Venuto, and Hollywood Tanning Systems, Inc. ("HTS"). [Docket Item 41.] In this action,

Plaintiff MSKP Oak Grove, LLC ("MSKP") asserts claims under the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 et seq. ("NJUFTA"), arising from an allegedly fraudulent transfer of assets through which Defendants intended to avoid payment to certain creditors, including Plaintiff. Plaintiff is a commercial landlord to which HTS is indebted by a 2009 judgment in the amount of $411,573.45. Plaintiff alleges that following an asset purchase agreement with another corporation, Tan Holdings, LLC, in 2007, HTS fraudulently distributed $16 million to its shareholders, Defendants Carol and Ralph A. Venuto, Sr.,[1] Ralph A. Venuto, Jr., Carol Rebbecchi, and Richard P. Venuto ("the Shareholders"), and rendered HTS without sufficient assets to satisfy future obligations to creditors, including HTS's obligation to Plaintiff relating to a defaulted lease agreement.

In the instant motion, Defendants assert that they are entitled to judgment on the pleadings as to Plaintiff's NJUFTA claims because Plaintiff's claims are time-barred by the NJUFTA's four-year statute of repose in N.J.S.A. § 25:2-31. The parties agree that Plaintiff timely filed its initial Complaint, but dispute whether the Amended Complaint was filed more than four years after the allegedly fraudulent transfer. In the

[1] Because Ralph A. Venuto, Sr. died prior to the initiation of this action, Plaintiff names his estate as a defendant, represented by Defendant Carol Venuto as executrix.

event the Amended Complaint was filed more than four years after the allegedly fraudulent transfer, Plaintiff maintains that the Court must allow the Amended Complaint to relate back to the timely filing of the original Complaint pursuant to New Jersey Court Rule 4:9-3. The outcome turns on whether the NJUFTA statute of repose prohibits relation back, and if not, whether Plaintiff has demonstrated that the Amended Complaint should relate back under New Jersey Court Rule 4:9-3.

For the reasons discussed below, the Court will deny Defendants' motion for judgment on the pleadings because the Amended Complaint relates back and is timely.

## II. BACKGROUND

### A. Facts

The Court accepts as true the following facts in Plaintiff's Amended Complaint for purposes of Defendants' motion for judgment on the pleadings. Prior to the events alleged in this action, Defendant HTS was a New Jersey corporation that operated tanning salons and sold franchises and tanning equipment to independent tanning salons. (Am. Compl. ¶¶ 7-8.) In 2003, HTS leased a commercial retail space in a shopping center in Florida from TSO Oak Grove, LLC ("TSO"), a predecessor in interest to Plaintiff MSKP. (Id. ¶ 19.) In 2004, TSO consented to HTS's request to sublease the space to a franchisee of HTS (a non-party entity known as Altamonte Chick Shades,

Inc.), though HTS remained liable on the lease in the event of Altamonte's default. (Id. ¶ 21.) Plaintiff acquired the landlord's rights under the lease agreement in January 2007. (Id. ¶ 23.)

On April 18, 2007, HTS entered into an asset purchase agreement with non-party Tan Holdings, LLC, in which Tan Holdings acquired almost all of HTS's assets in exchange for $40 million, 25% of the issued and outstanding preferred units of Tan Holdings, and certain contingency payments depending on Tan Holdings' future earnings. (Id. ¶¶ 9-10, 12.) HTS remained liable on its lease with Plaintiff despite the sale to Tan Holdings. (Id. ¶ 21.)

On June 22, 2007, the asset purchase agreement closed between HTS and Tan Holdings, and HTS ceased operations shortly thereafter. (Id. ¶¶ 14-15.) After the closing, HTS used "much of" the $40 million acquisition price to settle all then-outstanding debts owed to creditors; Tan Holdings did not assume liability for HTS's debts that were due and owing at the time of the closing. (Id. ¶¶ 13, 16.) The remainder was distributed to the shareholders "at or subsequent to the closing of title on June 22, 2007" in the aggregate amount of approximately $16 million. (Id. ¶ 17.)

After HTS paid the company's debts that were due and owing at the time of the closing, and subsequently distributed the $16

million to its shareholders, HTS's remaining assets were the 25% ownership stake in Tan Holdings and the possibility of additional payments based upon Tan Holdings meeting certain earnings thresholds. In support of Plaintiff's fraudulent transfer claim, Plaintiff alleges that following the shareholder distribution, HTS's remaining assets were "insufficient to satisfy claims against [HTS], such as the claim of Plaintiff[,]" and were "not liquid" and "speculative." (Id. ¶¶ 38, 40.) Plaintiff also implies that HTS's 25% ownership in Tan Holdings had minimal real value, alleging that Tan Holdings did not succeed after the acquisition; in May 2009 it turned over its assets to its creditors. (Id. ¶ 37.)

On July 3, 2008, Plaintiff notified HTS that Altamonte, its sublettor franchisee, had defaulted on its lease. (Id. ¶ 24.) Plaintiff sued HTS and Altamonte in Florida state court to recover damages for breach of the lease. (Id. ¶ 25.) Plaintiff subsequently won a judgment against HTS for $411,573.45, which was recorded in the Superior Court of New Jersey on July 30, 2009 and remains unpaid. (Id. ¶¶ 26-28.) In addition to Plaintiff, at least 14 other landlord creditors have sought to collect on various liabilities of HTS after the shareholder distribution. (Id. ¶ 39.)

**B. Procedural history**

Plaintiff filed the original Complaint in this action on December 13, 2010, naming only the individual shareholders as defendants. [Docket Item 1.] Defendants moved to dismiss the Complaint for failure to state a claim and for failure to join a necessary party, namely HTS, which the Court granted on August 8, 2011, dismissing the Complaint without prejudice to Plaintiff filing a motion to amend and to join the new party. [Docket Items 11 & 12.] Plaintiff subsequently filed an Amended Complaint on November 14, 2011. [Docket Item 24.] The Amended Complaint asserted six counts against Defendants: Counts One through Four involved claims under the NJUFTA, Count Five sought to recover under a theory of improper distribution under N.J.S.A. § 14:6-12(1)(c), and Count Six sought to recover under a theory of unjust enrichment.[2] Defendants again moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court denied Defendants' motion as to the first three counts, holding that Plaintiff had sufficiently alleged a fraudulent transfer under three subsections of the NJUFTA, but granted Defendants' motion as to Counts Four, Five, and Six. MSKP Oak Grove, LLC v. Venuto, 875 F. Supp. 2d 426, 443 (D.N.J. 2012). Following entry of an Order granting in part and denying

[2] This Court exercises diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332.

in part Defendants' motion to dismiss [Docket Item 34], Defendants filed an Answer to the Amended Complaint on July 13, 2012. [Docket Item 40.]

On July 18, 2012, Defendants filed the instant motion for judgment on the pleadings due to untimeliness [Docket Item 41], which Plaintiff opposes [Docket Item 46.] In January, 2013, the Court issued an Order [Docket Item 59] staying all scheduling deadlines and administratively terminating the instant motion without prejudice until factual findings were issued in a related case pending before Judge Noel Hillman, Rowen Petroleum Properties, LLC v. Hollywood Tanning Sys., Inc., 899 F. Supp. 2d 303 (D.N.J. 2012).

Following Rowen's dismissal, on March 5, 2014, the Court relisted for consideration Defendants' motion for judgment on the pleadings and permitted the parties to submit supplemental briefing regarding a related New Jersey state court case, GS Partners, LLC v. Carol Venuto, et al., No. C-12044 (N.J. Super. Ct. Ch. Div. Nov. 8, 2012), in which another of Defendants' creditors asserted similar claims against Defendants[3] under the NJUFTA based on the same allegedly fraudulent transfer at issue in the present action. In GS Partners, the Chancery Division granted defendants' motion for summary judgment on the grounds

[3] All Defendants in the present action were named in GS Partners with the exception of HTS.

that plaintiff's claims against Defendants were barred by the NJUFTA four-year state of repose. On April 28, 2014, the New Jersey Superior Court Appellate Division reversed the Chancery Division's dismissal of plaintiff's claims under the NJUFTA, finding that although the NJUFTA is a state of repose, plaintiff's amended complaint could relate back to the filing of its initial complaint.[4] See GS Partners, No. C-12044, 2014 WL 1660586 (N.J. Super. Ct. App. Div. Apr. 28, 2014). With all permitted supplemental briefing complete, Defendants' instant motion for judgment on the pleadings is ripe for adjudication.

## III. STANDARD OF REVIEW

A defendant may move to dismiss a complaint before or after filing an answer. Fed. R. Civ. P. 12(b)(6) and (c); see also Borough of Sayreville v. Union Carbide Corp., 923 F. Supp. 671, 675 (D.N.J. 1996). A motion made before an answer is filed is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A motion made after an answer is filed is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c).").

[4] Defendants advise they intend to file a petition for certification in the New Jersey Supreme Court.

The differences between Rules 12(b)(6) and 12(c) are purely procedural, and the pleading standards of Rule 12(b)(6) are applied for both. Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Thus, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

As applied to the present motion, the Court accepts the factual content of the Amended Complaint as true and determines, with reference to the Complaint, the Amended Complaint, and the court's docket including prior motion practice whether the Amended Complaint relates back to the original Complaint under New Jersey's law regarding statutes of repose and New Jersey Court Rule 4:9-3.

**IV. DISCUSSION**

Defendants argue that Plaintiff's three remaining NJUFTA claims under §§ 25:2-25(a), 25:2-25(b)(1), and 25:2-27(a) are time-barred pursuant to the NJUFTA's four-year statute of repose. It is undisputed that Plaintiff's original Complaint was filed within four years of the allegedly fraudulent transfer. However, Defendants argue that Plaintiff's claims under the NJUFTA are not viable because Plaintiff's Amended Complaint was not filed until November 14, 2011, nearly five months after the expiration of the Act's four-year limitation period on June 22, 2011, and should not be permitted to relate back to the filing of the original Complaint. Plaintiff's Amended Complaint does not specify the exact date of the fraudulent transfer at issue and Plaintiff contends that discovery is necessary to determine the date. However, for the purposes of this motion, the Court will assume that the transfer occurred on June 22, 2007.[5]

The parties agree that the NJUFTA is a statute of repose and that New Jersey law should apply in determining whether relation back is permitted. Defendants rely primarily on

---

[5] Plaintiff alleges that the transfer occurred "at or subsequent to the closing of title on June 22, 2007." (Am. Compl. ¶ 17.) If the allegedly fraudulent transfer occurred after that date, the limitations period would extend correspondingly. In basing its analysis on the June 22, 2007 date, the Court considers the earliest date by which the limitations period could have run: June 22, 2011.

Greczyn v. Colgate-Palmolive, 183 N.J. 5 (2005), for the proposition that under New Jersey law, relation back is only permitted after the expiration of a statute of repose when a fictitious party is named in the original complaint and plaintiff later amends the complaint to substitute a later-identified party. Because fictitious party practice is inapplicable here, Defendants argue that relation back is not allowed and Plaintiff's claims under the NJUFTA must fail.

As noted above, all four individual defendants were named in the original Complaint which included NJUFTA allegations against them, while HTS was prominently mentioned but not originally named as a defendant.

Plaintiff counters that the New Jersey Supreme Court would allow relation back in this instance, rejecting Defendants' interpretation of Greczyn and maintaining that a statute of repose does not categorically proscribe relation back. Plaintiff notes support for its position in the Appellate Division's decision in GS Partners, where plaintiff's amended complaint was similarly filed beyond the NJUFTA's four-year period, and the court allowed the amended complaint to relate back to the original complaint, which was timely filed. GS Partners, 2014 WL 1660586, at *2-4.

**A. NJUFTA as a statute of repose**

As noted, the parties agree that § 25:2-31 is a statute of repose. As a point of distinction, "a statute of limitations is a procedural device that operates as a defense to limit the remedy available from an existing cause of action." Matter of Princeton-New York Investors, Inc., 199 B.R. 285, 293 (Bankr. D.N.J. 1996), aff'd, 219 B.R. 55 (Bankr. D.N.J. 1998) (hereinafter "Princeton I") (quoting First United Methodist Church v. U.S. Gypsum Co., 882 F.2d 862, 865-66 (4th Cir. 1989)). In contrast, a statute of repose "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." Id. Statutes of repose extinguish a cause of action unless the action is brought within a specific time period, "barring [] the right to bring an action rather than the remedy prescribed." Id. at 293 n.4.

"[T]he determination that a statute of limitations is a statute of repose must be clear from either the plain language of the statute or the legislative intent." In re Sharps Run Associates, L.P., 157 B.R. 766, 784 (Bankr. D.N.J. 1993). Section 25:2-31 ("Extinguishment of cause of action") provides in pertinent part:

> A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:
> a. Under subsection a. of § 25:2-25, within four years after the transfer was made or the obligation was incurred

> or, if later, within one year after the transfer or obligation was discovered by the claimant;
> b. Under subsection b. of § 25:2-25 or subsection a. of § 25:2-27, within four years after the transfer was made or the obligation was incurred . . . .

N.J.S.A. § 25:2-31. The use of the term "extinguished" manifests legislative intent to eliminate a cause of action after a predetermined time period, a distinctive characteristic of a statute of repose.[6]

The statutory language and legislative history of § 25:2-31 suggest that the NJUFTA was intended to be a statute of repose. If the four-year limitation period has expired, a claimant's

---

[6] In the New Jersey Senate Labor, Industry and Profession's Committee Statement Report which accompanied the enactment of the NJUFTA, the statute was referred to as one of limitations but clearly suggests a statute of repose: "The bill also provides a statute of limitations that bars the right rather than the remedy on expiration of the statutory periods prescribed." 1988 N.J. Sess. Law Serv. 74 (West) (emphasis added). Further, New Jersey courts and courts applying New Jersey law have consistently found that, in enacting the NJUFTA, the New Jersey Legislature intended to create a statute of repose. See, e.g., SASCO v. Zudkewich, 166 N.J. 579, 582 (2001) (referring to § 25:2-31 as a statute of limitations, but not deciding the issue of distinction from a statute of repose); In re G-I Holdings, Inc., Civ. 04-3423, 2006 WL 1751793, at *8 n.18 (D.N.J. June 21, 2006) ("It is hardly surprising that the Supreme Court in SASCO referred to the statute of limitations when the legislature used the same terminology but clearly meaning it was a statute of repose."); Del Mastro v. Grimado, No. L-2746-10, 2013 WL 4746486, at *8 n.7 (N.J. Super. Ct. App. Div. Sept. 5, 2013) (noting that the legislative history mistakenly refers to § 25:2-31 as a statute of limitations and that the use of that label is a misnomer); Intili v. DiGiorgio, 300 N.J. Super. 652, 661 (Ch. Div. 1997) (dismissing a fraudulent transfer claim that was filed beyond the four-year limitation period of § 25:2-31 because the "[New Jersey] Legislature's purpose would be frustrated if § 25:2-31's time limitations were relaxed").

ability to bring a cause of action with respect to a fraudulent transfer is extinguished. The only exception to the four-year limitation period provided by the New Jersey Legislature establishes a one-year limitation period from the time the claimant first discovers the fraudulent transfer, for a claim arising under § 25:2-25a, if such period is later than the four-year period.[7] Plaintiff does not invoke the one-year discovery rule in this case.

**B. Whether the NJUFTA permits relation back**

Next, the Court considers whether NJUFTA's statute of repose precludes relation back to the filing of the original Complaint.

[7] Moreover, many New Jersey courts and courts applying New Jersey law have held that § 25:2-31 is a statute of repose. See Princeton I, 199 B.R. at 293 n.4 (finding § 25:2-31 to be a statute of repose because it "embodies the most distinctive characteristic of a statute of repose, the barring of the right to bring an action rather than the remedy prescribed"); In re Buildings by Jamie, Inc., 230 B.R. 36, 45 (Bankr. D.N.J. 1998) (relying on Princeton I's determination that § 25:2-31 is a statute of repose in holding that a Chapter 7 Bankruptcy trustee's actions were not barred by the NJUFTA's four-year limitation period); G-I Holdings, Inc., 2006 WL 1751793, at *7 (holding that § 25:2-31 is a statute of repose and therefore not subject to equitable tolling); In re NJ Affordable Homes Corp., Civ. 05-60442, 2013 WL 6048836, at *30 (Bankr. D.N.J. Nov. 8, 2013) (acknowledging that § 25:2-31 is commonly held to be a statute of repose); Intili, 300 N.J. Super. at 661 (giving accord to Princeton I's determination that § 25:2-31 is a statute of repose).

The parties agree that this Court must apply New Jersey law to determine whether the NJUFTA permits relation back.[8] "A federal court under Erie is bound to follow state law as announced by the highest state court." Wayne Moving & Storage of N.J., Inc. v. Sch. Dist. of Phila., 625 F.3d 148, 154 (3d Cir. 2010) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 253 (3d Cir. 2010)). The New Jersey Supreme Court has not considered whether the extinguishment provision of the NJUFTA permits an amended complaint to relate back to the date of the original complaint. "When the state's highest court has not addressed the precise question presented, [we] must predict how the state's highest court would resolve the issue." Id. (quoting Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)). "[W]e must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at

[8] "A federal court sitting in diversity must apply state substantive law and federal procedural law." Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000). "Statutes of limitations are treated as substantive rules of decision for purposes of [Erie]." In re TMI, 89 F.3d 1106, 1112 n.5 (3d Cir. 1996). Further, "[b]ecause the relation back doctrine also determines 'the timeliness of action,' state law governs whether a new state claim will relate back to the original state cause of action." In re Sharps Run Associates, L.P., 157 B.R. 766, 779 (D.N.J. 1993).

hand." Id. (quoting Covington v. Cont'l Gen. Tire, Inc., 381 F.3d 216, 218 (3d Cir. 2004)). Moreover,

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

Id. (quoting Sheridan, 609 F.3d at 254).

Because the New Jersey Supreme Court has not considered whether the NJUFTA permits relation back, "[w]e begin our analysis with intermediate state court judgments and grant them 'significant weight in the absence of an indication that the highest state court would rule otherwise.'" Id. (quoting Orson, 79 F.3d at 1373 n.15).

The Court finds the Appellate Division's decision in GS Partners to be particularly instructive because it addressed a factual and procedural scenario nearly identical to the present matter and involved similar claims under the NJUFTA against the same Defendants based on the same allegedly fraudulent transfer. In GS Partners, the court found that the allegedly fraudulent transfer to defendants occurred on June 22, 2007. GS Partners, 2014 WL 1660586, at *2. Plaintiff filed its original complaint on June 20, 2011, within four years of the transfer date. Id. However, plaintiff's amended complaint was filed on February 2, 2012, over four years after the transfer at issue. Id.

Defendants filed a motion for summary judgment on the grounds that plaintiff's claims were barred by the NJUFTA's statute of repose. Id.

The Chancery Division found that the NJUFTA claims satisfied the requirements of New Jersey Court Rule 4:9-3 for relation back,[9] but nonetheless held that relation back did not apply because plaintiff's claims were time-barred by § 25:2-31. Id. Like Defendants here, the Chancery Division relied on Greczyn v. Colgate-Palmolive as controlling precedent with respect to the relation back of an amended complaint beyond the limitation period of a statute of repose. Id. at *3. The Chancery Court interpreted Greczyn as holding that relation back

---

[9] Rule 4:9-3 provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

N.J. Rule 4:9-3 (emphasis added).

is only permitted under the NJUFTA in the context of fictitious party practice. Id.

In Greczyn, plaintiff was injured when she tripped and fell on a stairway in a building nine years after its completion. Greczyn, 183 N.J. at 7. The statute of repose that protects designers and builders, N.J.S.A. § 2A:14-1.1, has a ten-year period of limitation in which a plaintiff can bring a claim. Id. Plaintiff's initial complaint was timely filed, but named several fictitious defendants, identified as the designers of the stairway. Id. One year after the expiration of the ten-year period, plaintiff amended her complaint upon learning the designer's identity. Id. at 7-8. In opposition to a motion for summary judgment by the named designer, plaintiff argued the amended complaint should relate back to the filing of the original complaint, which was within the ten-year period. Id. at 8-9. The New Jersey Supreme Court agreed, holding that because Greczyn's complaint was filed within the ten-year period, permitting relation back of an amended complaint in the context of fictitious party practice would not conflict with the legislative intent to "limit the time within which a cause of action may arise against an architect or builder." Id. at 17-19 (emphasis in original). Further, the Supreme Court held that "[e]ven statutes of repose . . . 'need not necessarily be construed rigidly'" and that "our 'approach to [statutes of

repose] has evolved to one that recognizes that their applications depends on statutory interpretation focusing on legislative intent and purposes.'" Id. at 18 (quoting LaFage v. Jani, 166 N.J. 412, 421-22 (2001) (quotation omitted)). Thus, relying exclusively on its interpretation of Greczyn, the Chancery Division in GS Partners held that plaintiff's claims under the NJUFTA were barred and could not relate back to the date of the original complaint.

The Appellate Division reversed and permitted relation back. Importantly, the Appellate Division did not read Greczyn as announcing the sole exception (fictitious party practice) by which a plaintiff can invoke the doctrine of relation back to salvage a cause of action otherwise time-barred by a statute of repose. Rather, the Appellate Division found that Greczyn "is better understood as consistent with permitting relation back under Rule 4:9–3, provided that the claims asserted in the amended pleading arose out of the same 'conduct, transaction or occurrence' as alleged in the timely-filed pleading and are against the same parties." GS Partners, 2014 WL 1660586, at *4. The Appellate Division went on to state that "[a]s in Greczyn, allowing relation back in such circumstances does not violate the legislative intent of N.J.S.A. [§] 25:2-31." Id.

As discussed by the Appellate Division in GS Partners, the court reached a similar result in In re Sharps Run Associates,

L.P., 157 B.R. 766 (Bankr. D.N.J. 1993), even without the benefit of Greczyn. There, the court was asked to determine whether N.J.S.A. § 42:2A-46(a) prohibited relation back under Fed. R. Civ. P. 15(c). Similarly, § 46(a) contains a one-year period of limitation as to the liability of a partner who receives a return of his contribution to the partnership. The court allowed relation back, indicating that while the time bar appeared to be a statute of limitations, "[e]ven assuming, *arguendo,* that § 46(a) is a statute of repose, the outcome would remain unchanged." Sharps Run, 157 B.R. at 785.

The Appellate Division also found its reading of Greczyn to be consistent with "[t]he doctrine of substantial compliance [which] allows for the flexible application of a statute in appropriate circumstances." GS Partners, 2014 WL 1660586, at *4 (quoting Negron v. Llarena, 156 N.J. 296, 304 (1998)). In Negron, the New Jersey Supreme Court held that a plaintiff had substantially complied with the Wrongful Death Act's statute of limitations when plaintiff brought a wrongful death action against doctors in New Jersey state court beyond the applicable limitations period following the dismissal of the same timely-filed complaint in federal court for lack of diversity jurisdiction. Negron, 156 N.J. at 305-06. The Appellate Division in GS Partners held that "[t]here is as much reason in this case to permit relation back of the February 2012 filing of

an amended complaint in the same court as there was to permit an otherwise time-barred filing in Negron in a different court." GS Partners, 2014 WL 1660586, at *4. Accordingly, the Appellate Division held that § 25:2-31 did not prevent plaintiff's amended complaint from relating back to the date of the original complaint. Id.

This Court agrees with the Appellate Division's reading of Greczyn and finds the Appellate Division's holding in GS Partners to be highly persuasive. Thus, the Court holds that the statute of repose in N.J.S.A. § 25:2-31 does not preclude the possibility of relation back if N.J. Ct. R. 4:9-3 is satisfied.

**C. Whether the Amended Complaint relates back to the filing date of the Complaint under N.J. Ct. R. 4:9-3**

As in GS Partners, Plaintiff's Amended Complaint did not change the nature of Plaintiff's claims or add any parties not already on notice as to Plaintiff's claims;[10] the Amended

[10] Although the Amended Complaint added HTS as a defendant, all four shareholders of HTS were named in the original Complaint. Under New Jersey law, "[r]elation-back depends upon whether the newly added party has demonstrated a sufficient identity of interest to justify treating it and the originally named party as a single legal entity." Otchy v. City of Elizabeth Bd. of Educ., 325 N.J. Super. 98, 108 (App. Div. 1999) (holding that a sufficient identity of interest is established when the added party "would not be prejudiced by having to defend an action which it 'knew or should have known' would have been brought against it but for the error of identification"). Here, the Court is satisfied that there is a sufficient identity of interest between Defendant HTS and its four individual

Complaint simply added factual support for the allegations in the original Complaint. Furthermore, it cannot be said that allowing relation back in this instance would frustrate the purpose of § 25:2-31 because the "chief consideration underlying [statutes of repose] is said to be fairness to a defendant." Sharps Run, 157 B.R. at 785 (quoting Rosenberg v. Town of North Bergen, 61 N.J. 190, 201 (1972)). "The elements of fairness include not having to defend against stale claims and the security of knowing that past obligations have been wiped clean." Id.

Allowing relation back here would not be unfair or prejudicial to any defendant, including HTS. Like the parties identified in the original complaint and given adequate notice in Greczyn, here the individual shareholder Defendants were named in the original Complaint before the four-year limitation expired. Upon service of the original Complaint, Defendants were aware that a judgment had been entered in favor of Plaintiff and against HTS, that the judgment remained unpaid, and that prior to the entry of judgment, HTS distributed assets to its shareholders. While the original Complaint's allegation

---

shareholder Defendants and HTS cannot argue that it lacked notice of Plaintiff's claims because the timely-named shareholder Defendants are the sole shareholders of HTS. Thus, HTS would not be prejudiced by its addition to the litigation because HTS "knew or should have known" action would be brought against it when the original Complaint was filed.

that "Hollywood Tanning Systems, Inc. distributed its assets to its shareholders" was initially insufficient for the purposes of stating a claim under the plausibility pleading standard, Plaintiff's original Complaint was sufficient to put Defendants on notice as to the essential NJUFTA claims which were repeated in the Amended Complaint. The nature and scope of Plaintiff's claims were adequately set forth in the original Complaint and belied any expectation of repose by the defendants. Indeed, the original defendants, in seeking to dismiss the Complaint while still within the four year limitations period, argued for dismissal to join their corporation as a necessary party – HTS – since HTS was the transferor of the assets in question. Thus, all of the HTS shareholders acknowledged prior to the expiration of the four-year period that Plaintiff was in fact accusing them and HTS in connection with the fraudulent or improper distribution of HTS assets to the shareholders in violation of the NJUFTA at N.J.S.A. § 25:2-25 & 27, as alleged in the First Count of the Complaint. This is not surprising, since the original Complaint specifically named Hollywood Tanning Systems, Inc. and accused it of distributing its assets to the shareholder defendants in violation of N.J.S.A. § 25:2-25 & 27. (See Compl. [Docket Item 1] ¶¶ 9-12.) The Complaint just didn't name HTS as a defendant.

The dismissal of the initial Complaint was without prejudice because it appeared likely that Plaintiff could cure the deficiencies in pleading, or at least should have that opportunity. As for the failure to name a necessary party, Plaintiff added HTS as a defendant, as the four defendant shareholders indeed had called for in their original motion. The amended claims against the original defendants were likewise not new; they were simply further explication of the manner of the alleged fraud in the distribution of HTS assets to them as shareholders, in accordance with the specificity required by Rule 9(b), Fed. R. Civ. P.

There is likewise no doubt that HTS knew, through its sole shareholders, within the limitations period, that the action was also intended to be brought against it, as required by Rule 4:9-3, supra. Not naming HTS as a defendant, while naming the HTS shareholders who allegedly controlled and received the fraudulent distribution at issue, is the type of "mistake concerning the identity of the proper party" that Rule 4:9-3 requires for relation back. Moreover, under New Jersey law, "[r]elation-back depends upon whether the newly added party has demonstrated a sufficient identity of interest to justify treating it and the originally named party as a single legal entity." Otchy v. City of Elizabeth Bd. of Educ., 325 N.J. Super. 98, 108 (App. Div. 1999); see also Walters v. Breathless

2000, A-5235-08T1, 2010 WL 4103683, at *8 (N.J. Super. Ct. App. Div. July 23, 2010) (finding sufficient identity of interest for purposes of relation back where newly added party was original party's principal shareholder). Likewise, under Fed. R. Civ. P. 15, courts in the Third Circuit have found sufficient identity of interest between a closely held corporation and its principal shareholders to permit relation back. See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 197 (3d Cir. 2001) ("Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.") (quotation omitted); Bechtel v. Robinson, 886 F.2d 644, 653 (3d Cir. 1989) (allowing amendment adding corporation as a party to relate back to original filing of complaint against corporation's principal shareholder and executive under Fed. R. Civ. P. 15); Seber v. Daniels Transfer Co., 618 F. Supp. 1311, 1313-14 (W.D. Pa. 1985) (permitting amendment adding both the sole shareholder and the chief operating officer of closely held corporation to relate back to the filing of the original complaint which named only the corporation). Thus, there could be no surprise to HTS or its defendant shareholders when HTS was formally named as a defendant in the Amended Complaint, and there is sufficient

identity of interest between HTS and its sole shareholders to permit relation back.

Relation back under New Jersey Court Rule 4:9-3 is to be liberally allowed. Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 499 (2006) (quoting Harr v. Allstate Ins. Co., 54 N.J. 287, 299-300) (1969)). For the reasons explained above, the Amended Complaint clearly satisfies Rule 4:9-3, and the claims against Defendants are timely by virtue of relation back to the Complaint.

Furthermore, consistent with the Appellate Division's consideration of the doctrine of substantial compliance, the Court agrees that there is as much reason to allow relation back here as there was in Negron. "Courts invoke the doctrine of substantial compliance to 'avoid technical defeats of valid claims.'" Negron, 156 N.J. at 305 (quoting Cornblatt v. Barrow, 153 N.J. 218, 240 (1998)). In order to prove substantial compliance, the following factors must be met: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute." Id. (quoting Bernstein v. Bd. of Trustees of Teachers' Pension & Annuity Fund, 151 N.J. Super 71, 76-77 (App. Div. 1977)). Plaintiff

filed the original Complaint on December 13, 2010, within the four-year limitation period of § 25:2-31 such that Defendants had no expectation of repose when timely served with the original Complaint. The Court did not file its opinion on Defendants' first motion to dismiss until August 8, 2011. Assuming the transfer happened on June 22, 2007, the Court's opinion was entered eight months after the filing of the original Complaint and two months after the four-year statute of repose had already expired. Plaintiff promptly filed a motion to amend the complaint once the Court filed its Opinion. Had the Court entered its Opinion two months earlier, it is likely that Plaintiff would have equally promptly amended its Complaint so as to comply with § 25:2-31. Therefore, it is clear that Plaintiff acted promptly and diligently in filing the Amended Complaint and Defendants were not prejudiced by any undue delay. Only the fortuity of the time it took to brief, argue, and decide the dismissal motion – the motion, after all, that pointed out that HTS was a necessary party - caused this delay, not the Plaintiff.

Finally, having found persuasive the Appellate Division's holding in GS Partners, the Court must consider any indications that the New Jersey Supreme Court would rule otherwise. Precedents involving equitable tolling when no complaint was filed within the limitation period shed little light upon the

present case. As discussed above, many New Jersey courts and courts applying New Jersey law have held that the NJUFTA is a statute of repose, and some have indicated that it is therefore not subject to equitable tolling. See, e.g., Princeton I, 199 B.R. at 293 n.4; In re Buildings by Jamie, Inc., 230 B.R. at 45; G-I Holdings, Inc., 2006 WL 1751793, at *7; In re NJ Affordable Homes Corp., 2013 WL 6048836, at *30; Intili, 300 N.J. Super. at 661. However, none of these cases involved relation back and nearly all address fraudulent transfer claims in the bankruptcy context. For example, in Princeton I and Buildings by Jamie, the courts were asked to determine whether a bankruptcy trustee's actions were time-barred under § 25:2-31. Princeton I, 199 B.R. at 287-289; Buildings by Jamie, 230 B.R. at 45. Similarly, in G-I Holdings, the court heard an appeal from a bankruptcy court decision allowing for the commencement of an adversary proceeding challenging an allegedly fraudulent transfer. G-I Holdings, 2006 WL 1751793 at *1. The court held that equitable tolling, as a matter of law, is not applicable to a statute of repose such as § 25:2-31. Id. at *7. However, this holding does not address, nor should it be applied to, the facts of the present action, which involves relation back of an amended complaint to a timely-filed initial complaint.

The only relevant New Jersey cases identified by the parties addressing § 25:2-31 outside the bankruptcy context are

SASCO and Intili. SASCO addressed when the four-year limitation period began to run. SASCO, 166 N.J. at 582. Intili did not allow equitable tolling because the original complaint was not timely filed within the four-year limitation period of § 25:2-31. Intili, 300 N.J. Super. at 577-78. Accordingly, the parties have not identified, nor has the Court found, any indication that the New Jersey Supreme Court would not permit Plaintiff's Amended Complaint to relate back to the date of its original Complaint for the purposes of claims under the NJUFTA.

**V. CONCLUSION**

For the reasons discussed above, the Court concludes that the New Jersey Supreme Court would permit Plaintiff's Amended Complaint to relate back to the date of the original Complaint, and the Court will deny Defendants' motion for judgment on the pleadings. An accompanying Order will be entered.

**September 5, 2014**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge