IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MSKP OAK GROVE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROL VENUTO, individually and as executrix of the Estate of RALPH A. VENUTO, Sr., et al.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 10-6465 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Robert A. Vort, Esq.
2 University Plaza, Suite 101
Hackensack, NJ 07601
-and-
Joseph A. Molinaro, Esq.
666 Godwin Avenue, Suire 220
Midland Park, NJ 07342
    Attorneys for Plaintiff

Dimitri Luke Karapelou, Esq.
LAW OFFICES OF DIMITRI L. KARAPELOU, LLC
Two Penn Center
1500 JFK Boulevard, Suite 920
Philadelphia, PA 19102
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

    This case comes before the Court on motions in limine filed by both parties [Docket Items 232 & 233] in advance of a non-jury trial scheduled for May 15, 2017. The Court finds as follows.

## II. BACKGROUND

For the purposes of the instant motion, it suffices to recount the following. In this action, Plaintiff MSKP Oak Grove, LLC ("MSKP") asserts claims under the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 et seq. ("NJUFTA"), arising from an allegedly fraudulent transfer of assets through which Defendants intended to avoid payment to certain creditors, including Plaintiff. Plaintiff is a commercial landlord to which Hollywood Tanning Systems, Inc. ("HTS") is indebted by a 2009 judgment in the amount of $411,573.45. Plaintiff alleges that following an asset purchase agreement with another corporation, Tan Holdings, LLC, in 2007, HTS fraudulently distributed $23.9 million to its shareholders, Defendants Carol and Ralph A. Venuto, Sr.,[1] Ralph A. Venuto, Jr., Carol Rebbecchi, and Richard P. Venuto ("the Shareholders") on June 22, 2007, and rendered HTS without sufficient assets to satisfy future obligations to creditors, including HTS's obligation to Plaintiff relating to a defaulted lease agreement.

The parties now move for orders excluding, or striking their opponents' objections to, certain of the trial exhibits and witnesses identified in the Joint Final Pretrial Order,

---

[1] Because Ralph A. Venuto, Sr. died prior to the initiation of this action, Plaintiff names his estate as a defendant, represented by Defendant Carol Venuto as executrix.

signed by Magistrate Judge Joel Schneider on January 12, 2017. [Docket Item 226.] These motions are now fully briefed, and supplemented by a joint stipulation of certain facts filed on April 19, 2017. [Docket Item 248.]

### III. STANDARD OF REVIEW

This Court may hear the present motions in limine because it has the inherent authority to manage cases brought before it. Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). An "in limine ruling on evidence issues is a procedure which should, in the trial court's discretion, be used in appropriate cases." In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). One such appropriate case is where the court can shield the jury from unfairly prejudicial or irrelevant evidence. See United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). The in limine motion then fosters efficiency for the court and for counsel by preventing needless argument at trial. New Jersey Civil Procedure § 16–2:2 (citing Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). Although pretrial motions in limine are also permissible in a non-jury case, their utility is diminished because the judge determining the admissibility of evidence is also the fact finder, and thus many such objections can be deferred until trial.

**IV. DISCUSSION**

At trial, Plaintiff will be required to prove by clear and convincing evidence the various essential elements of its NJUFTA claims,[2] including that the Shareholders intended to hinder, delay, or defraud MSKP through the Shareholders' distribution of most proceeds from the June, 2007 Tan Holdings transaction to themselves. Plaintiff seeks to do this, in part, by introducing testimony and documentary evidence of Defendants' behavior towards other creditors and in other lawsuits, specifically in connection with suits against HTS by Hadis Nafar, GS Partners, HT of Highlands, and Rowan Petroleum Properties, LLC; and against Hollywood Hands by Warminster Group, L.P.; and against Ralph Venuto, Sr., and other companies he owned. Plaintiff also seeks to use much of this evidence to prove that HTS was insolvent and/or maintained inadequate cash reserves in relation

---

[2] Specifically, as discussed in the Opinion filed June 29, 2016 [Docket Item 215], Plaintiff asserts claims under the NJUFTA in three counts. Count One alleges that the $23.8 million shareholder distribution to Defendants violates the intentionally fraudulent transfer provision of the NJUFTA, N.J.S.A. 25:2-225(a). Id. at 28-34. Count Two alleges that the shareholder distribution constitutes a constructive fraudulent transfer because HTS's remaining assets were unreasonably small in relation to its business, in violation of N.J.S.A. 25:2-25(b)(1). Id. at 34-40. Count Three alleges that the shareholder distribution caused HTS to become insolvent, in violation of N.J.S.A. 25:2-27(a). Id. at 40-42. Plaintiff's claim in Count Four under N.J.S.A. 25:2-27(b) was recently dismissed as barred by the statute of limitations in the Memorandum Opinion and Order of April 17, 2017 [Docket Items 246 & 247].

to its business between 2006 and 2010. Also contested in the instant motions are documents relating to the Estate of Ralph Venuto, Sr.; the assets of HTS; Defendants' rebuttal expert report by William Pederson and other documentary evidence from the Orchard Mall case; the admissibility of case law and filings from this case; and a few miscellaneous documents.[3] The parties have supplemented their briefing record with a stipulation of facts [Docket Item 248] by which the parties agree, inter alia, that all of the documents which Plaintiff intends to introduce are authentic and that Defendants reserve their right to challenge their relevance at trial.

**1. Other lawsuits against HTS**

Plaintiff seeks to introduce testimony and documentary evidence regarding a number of other lawsuits by creditors against HTS, including those involving Hadis Nafar, GS Partners, HT of Highlands Ranch, and Rowen Petroleum in the state and federal courts of New Jersey. Plaintiff argues that this evidence will be relevant to prove (i) that HTS was insolvent and maintained inadequate cash reserves, and (ii) that HTS

---

[3] Plaintiff also requests leave to amend the Joint Final Pretrial Order to add Glenn Geiger to its witness list, who will testify as to jurisdictional facts regarding Plaintiff's ownership and citizenship. Because Defendants do not oppose this relief, the Court will grant Plaintiff's motion to the extent it seeks this relief. If the facts of Plaintiff's citizenship are not in dispute, the Court would appreciate a suitable stipulation of facts in lieu of testimony.

intended to hinder, delay, or defraud creditors by "employing a scorched earth litigation strategy" against all its creditors. Defendants object to this evidence on the grounds that it is irrelevant and that much of it is hearsay. Defendants seek to exclude Plaintiff's Exhibits 16-19, 37-58 & 71.

At the outset, the Court notes that it appears that the parties have resolved their dispute over whether Plaintiff can call Mr. Federman or a representative from Travelers Insurance. The new stipulations of fact include agreements that the documents which each would be called to authenticate – a lease signed by Ralph Venuto, Sr. and an insurance policy issued to HTS, respectively – are authentic, obviating the need for their testimony at trial. Accordingly, the Court will deny Plaintiff's motion as moot to the extent that it seeks an order overruling Defendants' objections to Mr. Federman and the Travelers Insurance representative.

Because the parties have framed their arguments about other case evidence in broad terms, the Court too will address the issues ranging from the general to the specific. Under the Federal Rules of Evidence, evidence is only admissible to the extent that it is relevant. Fed. R. Evid. 402. The Rules define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." Fed. R. Evid. 401. This sets a low bar for admissibility, subject to the other Rules of Evidence. United States v. Starnes, 583 F.3d 196, 214 (3d Cir. 2009). However, even where evidence is relevant, it may be excluded where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This Court has already determined that evidence of Defendants' conduct in this and other litigations is not probative of their "intent to hinder or delay" creditors within the meaning of the NJUFTA; all parties are bound by the law of the case holding that "what is relevant to Plaintiff's success . . . is only proof of Defendants' intent to defraud or delay creditors <u>by means of a fraudulent conveyance</u>, in this case the shareholder distribution, and not any other conduct." Opinion dated June 29, 2016 [Docket Item 215] at 31 n. 7. Nevertheless, some items of evidence of these other suits may be probative of HTS's financial condition and whether HTS retained assets after the shareholder distribution that were "unreasonably small in relation to the business or transaction," or whether HTS was insolvent at the time of the shareholder distribution or became insolvent because of the distribution. See N.J.S.A. 25:2-25(b)(1) and 25:2-27(a).

Several clear guideposts emerge regarding the use of evidence from other HTS cases. First, Plaintiff will not be permitted to relitigate claims by other creditors against these defendants that were made but not adjudicated in other lawsuits. To permit Plaintiff to submit reams of evidence from other cases in hopes of proving that these defendants committed fraudulent acts in these cases toward other creditors, where there was no adjudication that such fraud had been proved, would impermissibly involve this Court in determining the merits of other creditors' unadjudicated claims from other cases. This is true of each of the other cases referenced by Plaintiff in which the matter of fraud was not adjudicated, namely, the Hadis Nafar, GS Partners, and HT of Highlands Ranch lawsuits. Such a trial-within-a-trial is not to be permitted where it would, as in the present circumstances, consume undue time to even know whether such fraud occurred, contrary to Rule 403, Fed. R. Evid. This presents a situation in which this Court finds the probative value of the evidence from unadjudicated accusations in other cases is substantially outweighed by the undue consumption of time that such minitrials would consume, tipping the Rule 403 balance squarely against admissibility of much that happened in other cases. The Court thus rules out Plaintiff's proposal to make a wholesale introduction of pleadings, briefs

and documents from other cases. Defendants' motion is granted to this extent.

Second, pleadings and briefs filed in other cases are not evidence. They are allegations, not proof. Pleadings and briefs are thus inadmissible standing alone. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996) (holding that "legal memoranda and oral argument are not evidence.").

Third, a judicial order from another case may be admissible if otherwise relevant and probative to the factual issues in this case, as a court may take judicial notice of another court's order upon the public docket when Rule 201, Fed. R. Evid., is satisfied. McTernan v. City of York, 577 F.3d 521, 525 (3d Cir. 2009) (noting that "a court may take judicial notice of a prior judicial opinion.").

Fourth, a relevant statement by a party opponent, though made in another case, is not hearsay and it may be admissible under Rule 801(d)(2), Fed. R. Evid. Further, a prior inconsistent statement of a witness, made in another case, is likewise not hearsay and it may be admissible if Rule 801(d)(1)(A), Fed. R. Evid., is satisfied.

Fifth, evidence that Defendants or their attorneys have caused delay or been uncooperative in other cases regarding claims of Defendants' fraud, as Plaintiff asserts, will generally not be admissible here. Defendants are not on trial

9

here for the manner in which they defend other creditors' claims. However, if another court has addressed such alleged misconduct and found that it occurred and that it gives rise in that case to an evidential inference or sanction, then Plaintiff here will be permitted to argue for its admissibility here. For example, if there is evidence that Defendants hid the true financial condition of HTS from creditors at or about the time of the alleged fraudulent transfer in 2007, such evidence may be intrinsic to the present case. The Court will then examine the probative value of such a finding to the issues in dispute and whether the Rule 403 concerns substantially outweigh the probative value. Such a determination cannot be made on the present record.

Resolution of some of these disputes is premature because "the context of trial" may provide clarity on the relevance and potential prejudice of each proffered piece of evidence. Ebenhoech v. Koppers Indus., Inc., 239 F. Supp. 2d 455, 461 (D.N.J. 2002) (noting that rulings on motions in limine "should not be made prematurely if the context of trial would provide clarity"); Sperling v. Hoffmann-La Roche, Inc., 924 F. Supp. 1396, 1413 (D.N.J. 1996) ("[I]t is difficult to rule on the admissibility of pieces of evidence prior to trial. It is often useful to wait and see how the trial unfolds."). The Court will discuss other specific issues raised in these motions.

Plaintiff has listed two witnesses who were participants in prior HTS litigation to whom Defendants object, namely, Stephen M. Orlofsky and Carmine Gallicchio.

Mr. Orlofsky's firm, Blank Rome LLP, was counsel to Hollywood Tanning Systems, Inc., in a suit filed in 2006 by Hadis Nafar that was removed to this Court, <u>Nafar v. Hollywood Tanning Systems</u>, Civil No. 06-3826; Plaintiff proposes to obtain Mr. Orlofsky's testimony about HTS's insurance policy which covered only counsel fees and costs of defense but not indemnification of any settlement or judgment against HTS, as well as addressing the contents of HTS's notice of removal which pleaded that damages sought from HTS exceeded $5 million. [See JFPTO, Part V, p. 26.]

Mr. Gallicchio, on the other hand, was the sole member of GS Partners which purchased an HTS franchise, for which GS Partners asserted fraud claims against HTS, Ralph Venuto, Jr. and Ralph Venuto, Sr. in 2009 in arbitration, which was terminated when HTS failed to pay its arbitration fee; Mr. Gallicchio would testify that GS Partners then filed suit in 2010 for damages against HTS, the Estate of Ralph Venuto, Sr., and Ralph Venuto, Jr., which resulted in an empty judgment against HTS only in 2011 in the amount of $959,359. [See JFPTO, Part V, p. 27.]

The need for Mr. Orlofsky's testimony has been mooted by the parties' stipulations. They have stipulated that in removing the Nafar case to federal court, HTS pleaded that the amount in controversy exceeded $5,000,000. Stipulations of Facts [Docket Item 248] at ¶¶ 1 & 2. Likewise, they have stipulated to the existence of HTS's sole insurance policy and attached a copy to the stipulations. Id. ¶ 3. Accordingly, Mr. Orlofsky's proffered testimony has been rendered unnecessary.

As for Mr. Gallicchio, while the parties have stipulated that the documents on which Gallicchio will rely (P-41 to P-61 and P-63) are authentic (Stipulations of Fact at ¶ 6), Defendants reserve their right to object to the relevance of these documents. Id. As discussed above, if Plaintiff intends to present these 21 documents to demonstrate that several of the Defendants employed an evasive litigation style in the GS Partners case, the Defendants' objection will be sustained. If there are particular documents from the GS Partners case that document HTS's financial condition at or about the time of the alleged fraudulent transfer in 2007, such documents may be admissible, but no determination can be made now. Likewise, for example, the court's final judgment may well be admissible if Plaintiff can show why defendants' acts in defrauding an HTS franchisee are probative of the alleged fraudulent conveyance, to the Defendants, of HTS's proceeds from the Tan Holdings

purchase in 2007; such a determination is likewise premature, and will be deferred for trial.

### 2. Hollywood Hands lawsuit

Next, Defendants seek to exclude, and Plaintiff seeks to overrule Defendants' objections to, documents related to <u>Warminster Group, L.P. v. Hollywood Hands</u>, Court of Common Pleas of Pennsylvania, Bucks County, Docket No. 2000-4882-18-1. (<u>See</u> P-114-135.) Plaintiff argues that this evidence is relevant to prove Defendants' "intent to hinder, delay and defraud;" Defendants take the position that this evidence is irrelevant as to HTS's assets because HTS was not a party to that lawsuit, and inadmissible hearsay under the Federal Rules of Evidence.

As above, Plaintiff is precluded from arguing that Defendants' conduct in other lawsuits is probative of their intent to hinder and delay creditors, because such conduct is not related to the shareholder distribution that is the focus of this suit. To the extent that Plaintiff plans to use this evidence to show that HTS held insufficient assets, Plaintiff has failed to show how such evidence is not inadmissible hearsay. While such evidence might be conditionally admissible on the grounds that Plaintiff proves at trial that HTS and Hollywood Hands were in fact the same entity, Plaintiff has failed to articulate either a non-hearsay use for this evidence

or a reason this evidence is excepted or exempted from the definition of hearsay.

The Federal Rules of Evidence define hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. It is the burden of the proponent of a particular piece of evidence to prove that the statement is admissible and is not hearsay. Idaho v. Wright, 497 U.S. 805, 816 (1990). It appears that Plaintiff seeks to introduce evidence of the judgment against Hollywood Hands to show another claim on HTS's assets, or the fact of another of HTS's liabilities. Plaintiff has not adequately articulated an admissible purpose for this evidence, but may be able to do so in the context of trial. For this reason, the Court will deny both motions in limine as they concern the Hollywood Hands lawsuit, without prejudice to both parties' right to raise these arguments again at trial.

### 3. Lawsuits involving Ralph Venuto, Sr. and his Estate

Defendants also seek to exclude, and Plaintiff seeks to overrule Defendants' objections to, Plaintiff's Exhibit 136, which is a "list of cases in which Venutos or their companies were parties" and Plaintiff's Exhibits 177 & 178, which are court filings related to the insolvency of the Estate of Ralph Venuto, Sr. [JFPTO at pp. 49, 51.]

As above, Plaintiff is precluded by the law of the case from introducing this evidence to show HTS's intent to hinder or delay creditors. To the extent that Plaintiff seeks to use this evidence to prove that <u>HTS</u> had inadequate assets after the shareholder distribution, Plaintiff has failed to show how these facts are related – Plaintiff has adduced nothing to prove that HTS's assets are the same as to Mr. Venuto's <u>personal</u> <u>assets</u>, or the assets of his <u>other</u> <u>companies</u>. Moreover, insofar as Plaintiff plans to use this evidence to prove Mr. Venuto's "predisposition to hinder, delay and defraud," Plaintiff has not shown that this evidence is not inadmissible character evidence pursuant to Fed. R. Evid. 404(a). Accordingly, the Court will grant Defendants' motion and deny Plaintiff's motion in limine on this point, and will bar Plaintiff from introducing evidence of lawsuits involving Ralph Venuto, Sr., his other companies, and his Estate insofar as HTS was not a party to any of them, nor has Plaintiff articulated a basis under Rule 406, Fed. R. Evid., by which these acts by Mr. Venuto, Sr. are probative of issues in this case.

### 4. Exhibits relied upon by Ms. Brown

Defendants also seek to exclude, and Plaintiff seeks to overrule Defendants' objections to, Plaintiff's Exhibit 162, which is an "E-mail from Rebecca McDowell to Robert Vort, Quickbooks Password." [JFPTO at p. 50.] Defendants contend that

this evidence is irrelevant to any issue reserved for trial, and that it only concerns "an issue already litigated and decided" with regards to Defendants' alleged misconduct in discovery. Plaintiff contends that this evidence is admissible as a basis of its expert Shelley Brown's report, pursuant to Fed. R. Evid. 703. The Court will reserve decision on this dispute until it has the benefit of the context of trial to evaluate whether this evidence is relevant to Ms. Brown's testimony and not unduly prejudicial or otherwise excludable under Rule 403, Fed. R. Evid., which the parties have not addressed in their motions.

Likewise, the Court will reserve decision on the admissibility of Plaintiff's Exhibit 140, "Documents requested from Hollywood Tanning which were not received." [JFPTO at p. 49.] Such evidence may or may not be relevant depending on Ms. Brown's testimony at trial.

### 5. The Orchard Mall case

Defendants seek to introduce testimony regarding and documentary evidence from Orchard Mall, LLC v. Venuto et al., Docket No. L-2044-10 (N.J. Super. Ct.), another case involving the Defendants, in which both Plaintiff's expert Ms. Brown and Defendants' expert, Mr. Pederson, appeared. Plaintiff objects to the testimony of Mr. Pederson at trial to the extent he will testify about his conclusions in the Orchard Mall case, and object to the introduction of Mr. Pederson's report and other

16

discovery and court filings from that case. (See Defendants' Exhibits 1, 5-7, 29-32, 49-50 & 62.)

Plaintiff takes the position that this evidence should be excluded because it is not relevant. In opposition, Defendants principally argue that this evidence is relevant because Plaintiff relied on Ms. Brown's Orchard Mall expert report in its pleadings, and because Ms. Brown relies on that report in her expert report in the instant case. In addition, Defendants argue that some of these documents are necessary to authenticate other documents in this case. Finally, Defendants argue that this evidence is admissible because "Plaintiff avers that these Exhibits are not relevant but provides no explanation."

As explained above, court filings from Orchard Mall are inadmissible as evidence of (or against) Defendants' fraud towards creditors where the case was settled and not finally adjudicated. (Defendants' Exhibits 49 & 62). Of course, Ms. Brown and Mr. Pederson may be cross-examined on their prior statements in the Orchard Mall case if they are inconsistent with their opinions at this trial. (Defendants' Exhibit 1.) Both expert witnesses will be permitted to rely on other material from the Orchard Mall case so long as it is the type of material customarily relied on by an expert in the field under Rule 703, Fed. R. Evid., but such facts or data need not be admissible. The Court will reserve decision on the admissibility of

Defendants' other proposed exhibits related to the Orchard Mall case (Defendants' Exhibits 5-7, 29-32 & 50) until it has the benefit of the context of trial to determine whether these materials are relevant and not unduly prejudicial to the experts' testimony in this case.

### 6. Court filings in this case

Next, Plaintiff seeks to exclude Defendants' Exhibits 2-4, which are three of Defendants' briefs in this case. Defendants take the position that such court filings are relevant because "they contain thorough expositions of the law of fraudulent transfer as it would apply to this case," and may introduce their filings "to assert arguments at trial which rely on these decisions including: law of the case for issues already ruled on by this Court; prior discussions of the issues and claims relevant to trial including factual observations, burdens of proof, elements of causes of action and legal theories; and the findings in these decisions." Plaintiff takes the position that briefs are not admissible because "argument is not evidence."

The Court grants Plaintiff's motion. Defendants' briefs are not admissible evidence – they are not relevant to, or probative of, any fact in dispute. Defendants' briefs are, of course, "of record" in the sense they are on the docket. Other than perhaps in a case in which an attorney's legal malpractice is at issue (and the briefs would be evidence of issues raised or not

18

raised), there is no basis for admitting such briefs into evidence, and Defendants' Exhibits 2-4 will be excluded.

**7. Case law**

Plaintiff also seeks to exclude Defendants' Exhibits 19-28, which are cases which Defendants plan to use to cross-examine Ms. Brown at trial. Plaintiff takes the position that case law is argument, not evidence, and that Ms. Brown cannot be cross-examined on case law because "she is an accountant – not an attorney." Defendants argue that it is proper to use case law on cross examination to impeach Ms. Brown's credibility because Ms. Brown relies on the treatise Pratt, <u>Valuing a Business</u>, in her expert report, and Pratt states that "Valuation decisions are affected by a wide variety of legal decisions and principles."

The Court is not inclined to permit Defendants to cross-examine Ms. Brown on legal issues reflected in judicial opinions. She is not testifying as an expert on the legal standards, and indeed such issues are for the Court in this case. Pointing out language in prior opinions in unrelated cases to an accounting expert witness who expresses no opinion as to what the law is, will be impermissible as beyond the scope of the expert's opinion and expertise. Plaintiff's motion to exclude Defendants' Exhibits 19-28 from being used to cross-examine Ms. Brown will be granted. Defendants may renew their request to use such prior court opinions for this purpose if Ms.

Brown's testimony purports to identify legal, rather than accounting, principles.

### 8. Miscellaneous documents

Finally, the parties dispute the admissibility of Defendants' Exhibits 53-55, 94, 126, and 129, which appear to be a variety of miscellaneous correspondence, court documents, and documents for Tan Holdings. [JFPTO at pp. 59-65.] The parties simply state that these documents are either "relevant" or "not relevant," without further explanation of what these documents are, how they are related to the case, and how and why they are admissible. For this reason, the Court will deny Plaintiff's motion as premature with respect to these exhibits and will defer decision unless and until these documents are sought to be introduced at trial.

## V. CONCLUSION

An accompanying Order will be entered.

| | |
|---|---|
| **May 5, 2017** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |